UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN HAWTHORNE, *on behalf of herself and those similarly situated*; <br><br> Plaintiff, <br><br> v. <br><br> NORTHVIEW VILLAGE, INC. d/b/a NORTHVIEW VILLAGE, HEALTHCARE ACCOUNTING SERVICES, LLC, and NORTHVIEW VILLAGE CENTER LIMITED PARTNERSHIP; <br><br> Defendants. | Case No. 4:23-cv-01711-SRW <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br><br><br> **JURY TRIAL DEMANDED** |

Carolyn Hawthorne (the "Plaintiff"), on behalf of herself and a putative class of similarly situated former employees as defined herein, brings this suit against Defendants Northview Village, Inc., doing business as Northview Village, Healthcare Accounting Services, LLC, and Northview Village Center Limited Partnership (collectively "Defendants"), by way of this Class Action Complaint against Defendants alleging as follows:

## NATURE OF THE ACTION

1.      This is a Class Action Complaint brought under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109 (the "WARN Act"), by the Plaintiff on her own behalf and on behalf of the other similarly situated persons against Defendants, her employers for WARN Act purposes.

2. Defendants collectively operate the Northview Village Nursing Home ("Northview Village"), which houses 170 residents, making it the largest skilled nursing home in St. Louis, Missouri.

3. On or about December 15, 2023, Defendants made a mass layoff by, unilaterally and without proper notice to employees or staff, terminating approximately 184 employees, including Plaintiff, at the facility located at 2415 N Kingshighway Blvd, St. Louis, Missouri.

4. After refusing to pay employees their wages, Defendants decided to ultimately close the Northview Village facility abruptly, and move residents out of the home, effectively terminating all employees.

5. Defendants verbally informed the affected employees in the Northview Village nursing home that, as of that same day, the facility was being evacuated, and Northview Village was shutting down.

6. The employees were unable to return to work because Northview Village was, and continues to be, shut down.

7. The impact of the closing on the St. Louis community cannot be understated. The closure of the plant was so sudden that the 170 residents who received services at the facility were bused to other care centers, with little warning, forcing some of the residents to leave with nothing but the clothes on their back.

8. Defendants' actions were so egregious that the Department of Health & Senior Services ("DHSS") issued a 59-page written Statement of Deficiencies, detailing how Defendants' reckless closing of its facilities put the lives of its employees and 170 residents at imminent risk.

9. Given the unceremonious termination of all employees on or around December 15, Defendants failed to provide 60 days advance written notice to employees or staff as required by the WARN Act, 29 U.S.C. § 2101 *et seq.,* to the affected employees.

10. Defendants' reduction in forces constituted a mass layoff or plant closing, which became terminations, commencing on December 15, 2023, and occurring within 30 days. As such, Plaintiff and other similarly situated employees, should have received the full protection afforded by the WARN Act.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1331 and 29 U.S.C. § 2104(a)(5).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 2104(a)(5).

## PARTIES

13. At all times herein relevant, each of the Representative Plaintiff was and are members of the nationwide class.

14. Plaintiff Carolyn Hawthorne is a citizen of the United States and resident of St. Louis, Missouri. Plaintiff Hawthorne was employed by Northview Village Nursing Home at all relevant times at the St. Louis, Missouri facility. She is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7).

15. Defendant Northview Village, Inc. d/b/a Northview Village is a Missouri incorporated company registered in Missouri. Defendant Northview Village, Inc. may be served via its registered agent, Mark S. Rubin, 231 S. Bemiston, Suite 1111, Clayton, MO 63105.

16. Defendant Healthcare Accounting Services, LLC ("HAS") is an Illinois limited liability company registered in Illinois. Defendant Healthcare Accounting Services, LLC may be served via its registered agent, Makhlouf Suissa, 2415 N. Kingshighway Blvd., St. Louis, MO 63113. It also maintains an office at 1600 S. Brentwood, Suite 200, St. Louis, MO 63114.

17. Defendant Northview Village Center Limited Partnership is a Missouri limited partnership registered in Missouri. Defendant Northview Village Center Limited Partnership may be served via its registered agent, Mark S. Rubin, 231 S. Bemiston, Suite 1111, Clayton, MO 63105.

18. Collectively, these entities are responsible for the operation of Northview Village Nursing Home located at: 2415 N Kingshighway Blvd., St. Louis, Missouri.

19. These entities acted as a joint and/or single employer for the purposes of the WARN Act.

20. These entities jointly and collectively made the decision to terminate the employees.

21. Consequently, Defendants are joint and severally liable for violations under the WARN Act.

## FACTS

***Defendants collectively operated as a joint and/or single employer under the WARN Act.***

22. Defendants, collectively, are a private, Missouri-based business that provides healthcare services to the St. Louis community.

23. At all relevant times, the St. Louis facility was run by three entities: Defendants Northview Village, Inc., Northview Village Center Limited Partnership, and HAS. These three entities acted as a joint and/or single employer within the meaning of 20 C.F.R. § 639.3(a)(2) and

principles under the WARN Act.

24. Northview Village, Inc. was the entity that purportedly employed employees, including Plaintiff. But in reality, material and higher-level operational and employment decision making came also from Defendant Northview Center Limited Partnership and Defendant HAS.

- *Common Ownership*

25. Northview Village is required to submit a financial and statistical report to the Missouri Department of Social Services every year.

26. In its last report submitted on May 31, 2023, Northview Village identifies Makhlouf and Lorraine Suissa, his wife, as owning 51% of Northview Village and Eric Rothner (family trusts) as owning 39.5% of Northview Village, for a total of around 90%.

27. Upon information and belief, the Suissas and Rothner have maintained, at all relevant times, the same percentage ownership – 51% and 39.5% – in Northview Village.

28. In the financial and statistical report submitted every year, Northview Village is required to identify transactions with "business firms related to the provider by common ownership."

29. In its last report submitted on May 31, 2023, Northview Village identifies Defendant Northview Center Limited Partnership and Defendant HAS as related organizations. According to the report, Northview Village has a lease with and pays rent to Northview Center Limited Partnership, and Northview Village pays HAS for home office services, which are centralized management and administrative services.

30. At all relevant times, Defendant Northview Center Limited Partnership has owned the property at 2415 N. Kingshighway, St. Louis, MO.

31. Upon information and belief, Northview Center Limited Partnership has been

owned and/or managed, at relevant times, by Maklouf Suissa and Lorraine Suissa, his wife, and Eric Rothner, and NVGP, Inc. (which in turn is owned and/or managed by Maklouf Suissa and Lorraine Suissa).  Filings for Northview Center Limited Partnership with the Missouri Secretary of State list the Suissas and Rothner as managers.

32. Defendant HAS is an entity that manages multiple long-term care facilities in the St. Louis and other metropolitan areas.  One of the facilities it owns and operates is Northview Village.  HAS continues to operate other facilities in the St. Louis area and elsewhere.

33. Upon information and belief, HAS has been owned and/or managed, at relevant times, by Makhlouf Suissa and Eric Rothner.  Filings for HAS with the Illinois Secretary of State list them as managers.

- *Common Directors and Officers*

34. Makhlouf Suissa and Lorraine Suissa are officers of Northview Village, Inc.. Filings with the Missouri Secretary of State for Northview Village state that Makhlouf Suissa serves as the President; and Lorraine Suissa as Secretary/Treasurer.

35. Thus, in effect, HAS's owners and managers make material business decisions and calls for Northview Village, Inc. They have authority to execute material business and employment decisions.

36. Matt Furgerson is the Chief Financial Officer of HAS.

37. On information and belief, Furgerson makes and plays a significant role in decisions about the operations and finances of Northview Village, including, for example, the decision to close the Northview Village facility.

- *Dependency and Interrelated Operations*

38. HAS is a "senior community network," meaning it runs a series nursing homes

throughout its purported network. In doing so, HAS makes material business decisions, including determining material aspects of Plaintiff and the putative class's employment, for the Northview Village facility and the Northview Village, Inc. business.

39. Accounting, for example, for Northview Village, Inc. and the Northview Village facility is run through HAS, using its operational support.

40. Likewise, HAS makes decisions about Northview Village's finances and payroll.

41. HAS employs high-level staff who work at Northview Village. These HAS staff persons direct and manage Northview Village employees and residents.

42. For example, HAS employs Kathy Lorey, who serves as the Director of Operations of Northview Village, to make significant decisions regarding staffing at Northview Village employees and managing the care of Northview Village residents.

43. HAS managers draft and set material business policies of Northview Village.

44. For example, the privacy policy on Northview Village's now-defunct website refers to communications coming from HAS and directs recipients of communications from HAS not intended for the recipient to inform a HAS representative by calling the Northview Village facility.

45. HAS managers are routinely involved in personnel decisions for Northview Village employees.

46. *Hiring*: HAS determines material staffing-related matters for Northview Village. HAS solicited applications for vacancies at the Northview facility on its own accord. Jobs were posted on HAS's website using a job description curated by HAS. The title of the online application references both Northview Village and HAS. On information and belief, HAS personnel are involved in deciding to hire employees employed by Northview Village, Inc. Paperwork for new hires to the nursing staff include a line requiring Kathy Lorey's approval.

47. **Labor Relations**: Some Northview Village, Inc. employees are represented by the Service Employee International Union Healthcare Missouri Kansas ("the Union"). Although the collective bargaining agreement is with Northview Village, Inc., the Union routinely interacted with HAS on matters related to the administration of that collective bargaining agreement. Kathy Lorey, for example, was involved in the resolution of grievances. On another occasion, when the Union did not receive dues deductions from Northview Village, Inc. per the collective bargaining agreement, the Union was put in touch with Matt Furgerson to resolve the matter. In addition, HAS personnel, including Kathy Lorey, were involved in negotiations of the most recent collective bargaining agreement with the Union.

48. **Compensation**: HAS employees are substantially involved in matters related to employees' compensation. For example, paperwork for changing a nursing employee's compensation includes a line for Kathy Lorey's signature. In addition, in January 2023, with the Union's involvement, HAS decided to grant mid-term wage increases to CMTs and CNAs at Northview Village.

49. **Promotions**: Promotions or changes of status in position for nursing staff require the approval of HAS personnel, including Kathy Lorey.

50. **Supervision of Employees**: Upon information and belief, HAS sets and monitors the material employment policies for the Northview facility and is involved in supervising and disciplining employees.

51. In short, the foregoing underscores that HAS's operation was inextricably intertwined with the Northview facility. At all material times, HAS and its leaders—Suissa, Rothner, Lorey, and Furgerson—were involved in executing all relevant business decisions.

4892-4351-6835, v. 1

- *De Facto Control*

52. HAS ultimately retains de facto control over all material aspects of employment, including determining whether to shut the facilities and give WARN notice.

53. On December 15, 2023, HAS officers and owners, including the individuals who are also officers and owners of Northview Village, Inc., decided not to pay staff money owed from the last payroll period.

54. In an e-mail dated December 15, 2023 at 2:27 PM to the facility's Administrator, HAS CFO Matt Furgerson stated in explanation of the above decision: "After a long fight to get the ownership to fund Northview's continuing losses, I, nor Suissa have been able to get funds from the other part of the ownership group for Northview.  I am not sure what to say as I have had many solutions to get us through our cash flow issues, but I do not have a solution this week.  I spoke to Mr. Suissa and he suggested that you give employees Mr. Rothner's office information as we were expected funds from him and he is not budging."

55. HAS decided to abruptly shut Northview's doors, despite financial alternatives readily available to continue operating.

56. Matt Furgerson ordered Northview Village residents to be transferred to other HAS-operated nursing homes, owned by Suissa, and to close the facility without notice.

57. Put differently, HAS and its leadership specifically directed the decisions leading to the Northview facility's closing, including (i) whether to pay employees their paychecks; (ii) whether to continue running the facility; (iii) whether to transfer residents away from the facility and to other HAS-operated homes; (iv) whether to attempt to continue running the facility; and (v) whether to give employees WARN notice.

*The Closing of the St. Louis, Missouri Facility*

58. Plaintiff was a Registered Nurse at the St. Louis, Missouri facility, working there full-time for the last approximately eleven years.

59. On December 15, 2023, employees at Northview Village, including Plaintiff, were informed that they would not be paid for the previous pay period, that the facility was closing, and that they needed to evacuate the residents from Northview Village.

60. The employees, including Plaintiff, cared for and evacuated approximately 170 residents from Northview Village over 12 hours even though they were informed they were not going to get paid. Plaintiff was one of the last individuals to leave Northview Village after ensuring every resident was safely evacuated.

61. By the morning of December 16, 2023, Northview Village was empty, and the facility closed.

62. The employees, including Plaintiff, were, and continue to be, unable to return to work because Northview Village remains shut down.

63. Defendants did not provide any WARN Act Notice as required by 29 U.S.C. §§ 2101 *et seq*. even though it planned to abolish, terminate, and/or layoff over one-hundred full-time employees employed there.

64. Upon information and belief, no circumstances existed that would have permitted Defendants from reducing the notification period as provided in 29 U.S.C. § 2102(b).

65. By failing to provide its affected employees who were temporarily or permanently terminated on or around December 15, 2023, with WARN Act Notices and other benefits, Defendants acted willfully and cannot establish that they had any reasonable grounds or basis for believing their actions were not in violation of the statute.

## **RULE 23 CLASS ACTION ALLEGATIONS**

66. Plaintiff brings her WARN Act claim as a Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Nationwide class:

> All employees of Defendants who were terminated pursuant to a mass layoff or plant closing (as those terms are defined in the WARN Act) within 90 days of December 15, 2023.

67. Class Action treatment of WARN Act claims is appropriate because all of Federal Rule of Civil Procedure 23's Class Action requisites can be satisfied. For example:

   a. The class includes, upon information and belief, over 50 class members, and, as such, is so numerous that joinder of all the class members is impracticable under these circumstances, thereby satisfying Federal Rule of Civil Procedure 23(a)(1).

   b. Questions of law and fact are common to the class, including, *inter alia*, whether Defendants provided adequate notice of her mass layoff under the WARN Act, 29 U.S.C. § 2102, and whether Defendants are a joint and/or single employer. Thus, Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(2).

   c. Plaintiff is a member of the class, and her claims are typical of the claims of other class members. Plaintiff has no interests that are antagonistic to or in conflict with the interests of other class members. Thus, Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3).

   d. Plaintiff will fairly and adequately represent the class and its interests. Moreover, Plaintiff have retained competent and experienced counsel who will effectively represent the interests of the class. Thus, Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4).

68. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or because adjudications with respect to individual class members would as a practical matter be dispositive of the interests of non-party class members.

69. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

70. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any question affecting only individual class members, and because a Class Action is superior to other available methods for the fair and efficient adjudication for this litigation.

**VIOLATIONS OF THE WARN ACT, 29 U.S.C. §§ 2101,** *et seq*.
**COUNT I**
**(WARN Act)**
**(*On behalf of Plaintiff and the putative class against all Defendants*)**

71. Plaintiff re-alleges and incorporates all preceding paragraphs as if set forth in full here.

72. Defendants are an "employer" within the meaning of the WARN Act, 29 U.S.C § 2101(a)(1). As described above, the three entities acted as a joint and/or single employer at all material times within the meaning of 20 C.F.R. § 639.3(a)(2).

73. Plaintiff and those they seek to represent were at all relevant times "affected employees" within the meaning of the WARN Act, 29 U.S.C § 2101(a)(5).

74. The December 15, 2023, permanent layoffs of at least 184 employees at Northview Village, a St. Louis, Missouri facility, resulted in "employment losses" as defined in 29 U.S.C. § 2101(a)(3)(B)(i)(I) and (II) for at least 33 percent of the employees and at least 50 employees.

75. For purposes of 29 U.S.C. § 2101(a)(3)(B)(i)(I) and (II), Northview Village, the St. Louis, Missouri, facility constitutes a single site of employment in that each employee's facility was the location to which relevant employees were assigned as her home base, the place from which her work was assigned, and the place to which they reported for work.

76. The WARN Act requires employers to provide 60-days' notice of any plant closing or mass layoff "to each representative of the affected employees . . . or, if there is no such representative at that time, to each affected employee," 29 U.S.C. § 2102(a)(1), and "to the State or entity designated by the State to carry out rapid response activities under [29 U.S.C. §] 3174(a)(2)(A)," as well as to "the chief elected official of the local government within which such closing or layoff is to occur," 29 U.S.C. § 2102(a)(2).

77. On information and belief, prior to December 15, 2023, Defendants did not give any prior written notice of the plant closing and/or mass layoff to any "affected employee," including Plaintiff and those they seek to represent, as that term is defined in 29 U.S.C § 2101(a)(5). Nor upon information and belief did Defendant give any *prior* written notice to the Missouri Department of Labor, Missouri Job Center, or to the chief elected official of the local government within which the mass layoff was ordered. Rather, Defendants waited until the day of the mass layoffs to give employees the requisite notice, and they never gave notice to the Missouri Job Center.

78. Defendants violated the WARN Act by failing to give timely written notice of the mass layoff as required by 29 U.S.C. § 2102(a), which began on or about December 15, 2023.

79. As such, Plaintiff and those they seek to represent are "aggrieved employees" within the meaning of the WARN Act, 29 U.S.C. § 2104(a)(7).

80. The WARN Act expressly permits an "aggrieved employee" to bring a civil action individually and on behalf of all those similarly situated to seek relief for violations of the provisions of 29 U.S.C. § 2102.  *See* 29 U.S.C. § 2104(5).

81. Moreover, Defendants' violations of the WARN Act were not in good faith, and Defendants had no reasonable grounds for believing that the plant closing or mass layoff it ordered was not in violation of the notice requirements at 29 U.S.C. § 2102.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for the following relief:

1. Certification of the Class as a Class Action pursuant to Federal Rule of Civil Procedure 23(b), and designation of Plaintiff as a representative of the Class and her counsel of record as Class Counsel.

2. A declaration that Defendants have violated the WARN Act;

3. A judgment against Defendants and in favor of Plaintiff and those she seeks to represent for back pay to the fullest extent permitted by the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

4. A judgment against Defendants and in favor of Plaintiff and those she seeks to represent for the loss of benefits, including, but not limited to, medical expenses incurred by Plaintiff and those they seek to represent during the employment loss, to the fullest extent allowable under the WARN Act, 29 U.S.C. § 2104(a)(1)(B);

4892-4351-6835, v. 1

5. A finding that Defendants' violations of the WARN Act were and are willful, not in good faith, and that Defendants had no reasonable grounds for believing that its mass layoff was not in violation of the notice requirements of the WARN Act, 29 U.S.C. § 2102;

6. A judgment against Defendants and in favor of Plaintiff and those she seeks to represent for litigation costs, expenses, attorney's fees to the fullest extent permitted under the WARN Act, 29 U.S.C. § 2104(a)(6), and for discretionary costs pursuant to Federal Rule of Civil Procedure 54(d);

7. A judgment against Defendants for civil penalties to the fullest extent allowable under the WARN Act, 29 U.S.C. § 2104(a)(3);

8. A judgment that Defendants are jointly and severally liable for the violations and damages, fees, costs and penalties; and,

9. Such other and further relief as this Court deems just and proper and allowed under the WARN Act.

This 9th day of February 2024.

Respectfully submitted,

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV*
Michael C. Iadevaia*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: 615/254-8801
Facsimile: 615/255-5419
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

John F. Garvey, #35879 (MO)
Colleen Garvey, #72809 (MO)
Ellen A. Thomas, #73043 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**

4892-4351-6835, v. 1

Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

Christopher N. Grant (MO Bar # 53507)
**SCHUCHAT, COOK & WERNER**
555 Washington Ave, Ste. 520
St. Louis, MO 63101
(314) 621-2626
(314) 621-2378
cng@scwattorney.com

*\* Pro Hac Vice*

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served upon all counsel of record through the Court's CM/ECF system on this the 9th day of February 2024.

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV*

4892-4351-6835, v. 1