UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN HAWTHORNE,<br>*on behalf of herself and those similarly situated*;<br><br>    Plaintiff,<br><br>v.<br><br>NORTHVIEW VILLAGE, INC.<br>d/b/a NORTHVIEW VILLAGE,<br>HEALTHCARE ACCOUNTING<br>SERVICES, LLC, and NORTHVIEW<br>VILLAGE CENTER LIMITED<br>PARTNERSHIP;<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 4:23-cv-01711-SRW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## BRIEF IN PARTIAL OPPOSITION TO MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT

### I. INTRODUCTION

Defendants Northview Village Inc, Healthcare Accounting Services, LLC, and Northview Village Center Limited Partnership ("Defendants") served the St. Louis community for many years, and on information and believe Healthcare Accounting Services continues to do so. On or around December 15, 2023, Defendants, acting as a single entity, unceremoniously notified their employees that they would be terminated. Whatever reasons it had for these actions, it failed to do right by its employees by refusing to give proper notice under the WARN Act to employees to look for alternative jobs. On December 22, 2023, Plaintiff initiated this putative class action to seek redress for Defendant's failure to provide proper WARN notice.

The case has proceeded into the very early stages of discovery. On March 21, 2024, the parties exchanged their initial disclosures, and on April 4, 2024, Plaintiff served her first round of

discovery on Defendants. Shortly after, and without substantively responding to outstanding discovery requests, Defendants' counsel now seeks to withdraw. Defendants' counsel did not respond to the discovery requests, instead reciting boilerplate "objections." Now, Defendant's counsel wishes to walk away, with no substitution counsel or other precautions in place to protect Plaintiff's interests in litigating this case. Defendants' counsel offer no assurances beyond designating an address—not even an actual human representative—to "serve" papers to.

Under these circumstances, Plaintiff opposes Defendants' counsel's motion to withdraw to the extent that it leaves her unable to litigate her case and unable to obtain the necessary and already-requested discovery to move the case forward. Plaintiff requests that the Court take certain precautions, including requiring Defendants to comply with outstanding discovery obligations and designating a *representative* for service of documents, before Defendants' counsel is permitted to withdraw without substitution.

## II. ARGUMENT

"When ruling on an attorney's motion to withdraw, the court must consider not only the reason for requesting leave to withdraw, but also 'the disruptive impact that the withdrawal will have on the prosecution of the case.'" *Peter Kiewit Sons', Inc. v. Wall Street Equity Grp., Inc.*, 2012 WL 5400037, at *1 (D. Neb. Nov. 5, 2012) (quoting *Byrd v. District of Columbia*, 271 F. Supp. 2d 174, 176 (D.D.C. 2003)). "As to the latter, the court considers whether the withdrawal may cause prejudice to the parties, interference with the administration of justice, or delay in resolving the case." *Id.* Given the posture of the case, Plaintiff seeks to bring to the Court's attention the significant delay and prejudice that will result from Defendants' counsel's withdrawal, absent additional Court action or precautions by Defendants.

Most significantly, "a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993). So, a corporation that fails to obtain licensed counsel faces default. *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856-57 (8th Cir. 1996). Still, Plaintiff has an obligation to prove that class certification and damages are proper—which are the subject of the first round of discovery. *See Cranor v. Skyline Metrics, LLC*, 2018 WL 11437828, at *1-2 (W.D. Mo. Dec. 14, 2018). Plaintiff, then, has serious concerns that, as one court put it, "to allow counsel's withdrawal from the case at this sensitive stage would bring the litigation to a grinding halt and force postponement of important deadlines . . . ." *See Byrd*, 271 F. Supp. 2d at 177.

Plaintiff's concern is particularly salient where Defendants' Counsel represented that "Defendants have advised that they have ceased any business operations and lack funds to pay attorneys' fees in this matter and will be unable to pay Counsel for legal representation." (Dkt. 33, PageID 121). Upon information and belief, Defendant Healthcare Accounting Services ("HAS") has continued to operate and do business.  It is maintaining and updating its website on a regular basis:  https://hmausa.org/.  It is still listed as an active LLC with the Missouri Secretary of State. And, according to information on its website, HAS continues to operate four other nursing homes in the St. Louis metropolitan area: Cori Manor Nursing; University Care Center; Elmwood Nursing and Rehab, and Edwardsville Care Center.  At the same time, Defendants' owners appear to be liquidating assets.  As detailed in the Petition, Mark and Lorraine Suissa and Eric Rothner hold ownership interests in Defendants and/or are intimately involved in their operations.  Earlier this

year, Suissa closed another HAS-operated home, Salem Village Nursing Home.[1]  Around May 1, 2024, Suissa sold HAS-operated Grand Manor Nursing & Rehabilitation.   According to records kept by government regulators, Mark and Lorraise Suissa still own shares in Cori Manor Nursing (100%), University Care Center (100%); Elmwood Nursing and Rehab (42%) and, Edwardsville Care Center (100%).  If Defendants have ceased operations as their counsel states, there is great worry that Defendants are making themselves insolvent, and ridding themselves of recoverable assets, so the owners may avoid having to pay damages in this lawsuit.  In this regard, an article in The St. Louis Post Dispatch details how the owners of Defendant Northview Village, including Mark Suissa and Eric Rothner, sent over $1 million dollars in payments to their other companies, including HAS, over the past several years.  Time is of the essence.

Plaintiff's concern is compounded by another problem: Defendants' current counsel refuses to engage with Plaintiff's counsel. Instead of responding to Plaintiff's discovery requests within thirty days, as required, Defendants' counsel lodged a series of boilerplate and baseless objections purportedly to protect their clients. They didn't respond to a single interrogatory. And they didn't produce a single sheet of paper. While Plaintiff empathizes with the difficulties explained by Defendant, there is no "lack of payment" exception to the Federal Rules, including Rule 11. Indeed, "an attorney who agrees to represent a party is obligated to see the work through to completion, and 'should not be permitted to abandon her responsibilities merely because she is unhappy with the nature of the relationship with the client.'" *Peter Kiewit Sons', Inc.*, 2012 WL 5400037, at *2 And "a party should not be empowered to hinder case progression by simply

---

[1] According to a news reports, workers at the Salem Village Nursing Home were not paid when the facility closed.  "Workers at closing Joliet nursing facility say they haven't been paid," 5Chicago,  at  https://www.nbcchicago.com/news/local/workers-at-closing-joliet-nursing-facility-say-they-havent-been-paid/3383157/ (last visited May 19, 2024).

refusing to communicate with his attorney." *Id.* (citing *Rophaiel v. Alken Murray Corp.*, 1996 WL 306457, at *2 (S.D.N.Y. 1996)).

Under these circumstances, allowing Defendant's counsel to withdraw—at the very least, without tying up loose ends over discovery—would, quite literally, grind the case to a halt at a critical moment. It would leave Plaintiff without any ability to pursue her case and possibly without the ability to collect, particularly if Defendants have no intention of identifying substitute counsel, as to which Defendants' counsel has provided no indication.

To be clear, some of Plaintiff's concerns may be assuaged if the Court or Defendants' counsel were inclined to put certain precautions in place or require that outstanding obligations are met prior to Counsel's withdrawal. One possibility is that Defendants' counsel are permitted to withdraw only after Defendants find substitution counsel. That would allow the matter to continue without delay, relieving Plaintiff's concerns. *See, e.g.*, *Walman Optical Co. v. Quest Optical, Inc.*, 2011 WL 13234983, at *2 (D. Minn. Nov. 15, 2011) (ordering Defendant's Counsel to continue to representation where "continued representation . . . does not constitute an 'unreasonable burden.'"). To the extent that Defendants do not intend to find substitute counsel, Plaintiff respectfully requests that Defendants be directed to respond to the outstanding discovery requests, including a motion to compel that will be filed, before permitting their withdrawal, and also ordered to quickly comply with scheduling depositions, including of its owners, the CFO of HAS, and corporate representatives. This would allow Plaintiff to have the information she needs to prosecute her case, even if Defendants ultimately default. Defendants' Counsel are, after all, still ***Defendants'*** legal representatives, so they owe an obligation to represent their client until this Court grants the motion to withdraw. Finally, Plaintiff would request that Defendants be directed to designate an actual human representative, not just a place (which, according to Defendant's

counsel's own representations, is no longer in business), to serve and accept pleadings to allow the Court and the other parties to properly communicate with Defendants.[2]

As it stands, Defendants' counsel offer nothing to insulate from these serious concerns. Instead, they seek to haphazardly withdraw from the case in a manner that leaves Plaintiff in a precarious position in which she may be unable to prosecute her case. The Court should not grant Defendants' counsel motion without protection to ensure Plaintiff and the putative class are not unduly prejudice.

### III. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court either deny the motion to withdraw without prejudice or order the precautions discussed herein.

DATED: May 20, 2024                    Respectfully submitted,

*/s/ Michael C. Iadevaia*
J. Gerard Stranch, IV
Michael C. Iadevaia*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

John F. Garvey, #35879 (MO)
Colleen Garvey, #72809 (MO)
Ellen A. Thomas, #734043 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

---

[2] Plaintiff also reserves the right to seek an order from the court to place assets in escrow.

4855-7906-3230, v. 2

Christopher N. Grant
Brady Lee Root
**SCHUCHAT COOK & WERNER**
555 Washington Avenue
Suite 520
St. Louis, MO 63101
(314) 732-1127
cng@scwattorney.com
blr@scwattorney.com

*\* Pro Hac Vice*
*Counsel for Plaintiff and the Proposed Class*

### CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served upon all counsel of record via CM/ECF on this the 20th day of May 2024.

*s/ Michael C. Iadevaia*
Michael C. Iadevaia