UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN HAWTHORNE, *on behalf of herself and those similarly situated*;<br><br>Plaintiffs,<br><br>v.<br><br>NORTHVIEW VILLAGE, INC. d/b/a NORTHVIEW VILLAGE, HEALTHCARE ACCOUNTING SERVICES, LLC, and NORTHVIEW VILLAGE CENTER LIMITED PARTNERSHIP;<br><br>Defendants. | ) | Case No. 4:23-cv-01711-SRW<br><br>Magistrate Judge Stephen R. Welby |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## INTRODUCTION

After nearly three years of hard-fought litigation, Plaintiffs and Class Representative Carolyn Hawthorne ("Class Representatives") respectfully request that the Court grant preliminary approval of the proposed Class Settlement, supported by the Declaration of Samuel K. Gladney ("Gladney Decl."), resolving their claims against Defendants Northview Village, Inc d/b/a Northview Village, Healthcare Accounting Services, LLC and Northview Village Center Limited Partnership ("Defendants"), in the above-captioned class action.[1]

Specifically, Plaintiffs requests an order (1) granting preliminary approval of the

[1] Capitalized terms shall carry the meaning ascribed to them in the Class Settlement Agreement unless otherwise noted herein.

Settlement; (2) appointing CPT Group as administrator of the settlement; (3) approve the proposed notice; (4) ordering the Settlement Administrator to direct and issue notice to the Class under the terms of the Settlement Agreement; and (5) entering the Settlement schedule as proposed by the terms of the Settlement Agreement.[2]

The Settlement provides Class Members with an excellent result, and it provides substantial relief to the class. If approved, the Settlement will establish a $364,668.75, non-reversionary common fund. The proceeds will be used to pay the former employees who were laid off without notice, administrative expenses, any Attorneys' Fees and Costs, and Class Representative Service Awards approved by the Court, as well as any applicable taxes. The value of the settlement, $364,668.75, constitutes a substantial recovery for the class—roughly 19% of calculated damages—an outstanding result in light of the financial circumstances of the Defendants and the 10 months of post judgment discovery attempting to locate assets.[3] Under the terms of the Settlement, Settlement Class Members will not have to file claims to receive distributions from the Settlement Fund; checks will be mailed automatically upon final approval.

The Settlement was reached following well-informed, arm's-length negotiation with opposing counsel. Given the risks and uncertainties of further, protracted litigation, the relevant businesses closing nearly two years ago, and the risks of continuing the attempt to locate assets in

---

[2] A class has already been certified here, Plaintiffs have been appointed class representatives, and Plaintiffs' counsel has been appointed class counsel. ECF No. 52. Therefore, there is no need to provisionally certify the class for "settlement purposes," as contemplated by Rule 23(e).

[3] Northview Village and Healthcare Accounting Services also recently and separately settled a case before the National Labor Relations Board, covering a portion of unpaid, accrued vacation due union-represented employees at the facility. For the sake of fairness and uniformity, the parties agreed to a payment for employees under that settlement at the same percentage of calculated damages in this case. The Regional Director for Region 14 approved withdrawal of the unfair labor practices in that matter, conditioned upon a separate settlement. See Case 14-CA-333453.

post judgment discovery, , the Settlement represents an outstanding result for the Settlement Class that is well within the range of fair, reasonable, and adequate. Accordingly, Plaintiffs requests that the Court enter an order preliminarily approving the Settlement, direct the Publication Notice to the Settlement Class, and scheduling a Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2). Defendants do not oppose the relief sought in this motion.

## STATEMENT OF FACTS

### I. Litigation and mediation.

The Court is familiar with the background of this case. *See generally* ECF No. 52, 62, Mem. & Order on Class Certification and Mem. & Order on Motion for Default Judgment.

Defendants are: Northview Village, Inc d/b/a Northview Village, an operator of a now defunct nursing home facility in north St. Louis; Healthcare Accounting Services, LLC, a management company that used to provide services to nursing homes, including to Northview Village as well as others in the area; and Northview Village Center Limited Partnership, a building company that owns the Northview Village property ("Defendants").

Plaintiff commenced this action on December 22, 2023. ECF No. 1. Plaintiff filed for class certification on September 26, 2024 and the court granted class certification on December 16, 2024. ECF No. 45, 46, 52. The Court defined the class as:

> All employees of Defendants who were terminated pursuant to a mass layoff or plant closing (as those terms are defined in the WARN Act) within 90 days of December 15, 2023.

ECF No. 52.

The court further appointed Plaintiff Carolyn Hawthorne as class representative, and appointed J. Gerard Stranch, IV, John Francis Garvey, Jr., and Michael C. Iadevaia of Stranch Jennings PLLC, and Christopher N. Grant of Schuchat Cook & Werner as Class Counsel. Id.

On May 8, 2024, Defendants' counsel filed a motion to withdraw. ECF No. 33. The same was granted on July 10, 2024. ECF No. 38. Plaintiff filed for clerk's default on July 16, 2024. As noted above, Plaintiffs then moved for class certification, which was subsequently granted. Over the next several months, Plaintiffs sent required notices to the class. ECF No. 55. Plaintiffs then moved for full default judgment which the Court granted on September 8, 2025 for the amount of $1,945,866.24. ECF No. 61-63.

As noted in the lawsuit, Defendant Northview Village closed in December 2023. Plaintiffs later learned that Defendant Healthcare Accounting Services closed around December 2024. Gladney Declaration, ⁋11. Notwithstanding, after obtaining the default judgment, Plaintiffs initiated post-judgment efforts to collect. A writ of execution of garnishment to a bank came back with information that the account, owned by Northview Village, had been closed. Plaintiffs then served interrogatories and requests for production for purposes of discovering assets. Id., ⁋10. New counsel entered their appearance for Defendants on April 29, 2026. Plaintiffs were provided answers and documents in response to some of their requests; Defendants objected to others as irrelevant. Id. Plaintiffs' efforts to collect included extensive research into the financial status of Defendants, the closing of the relevant businesses, the disposition of assets, and Defendants' transactions with their individual owners. Plaintiffs considered whether to pierce the corporate veil. Plaintiffs also registered their judgement in the US District Court for the Northern District of Illinois, and served a bank garnishment there against an account of Defendant Northview Village Center Limited Partnership. Id.,⁋13. At that point, both sides engaged in serious settlement discussions. Id., ⁋18. The parties ultimately agreed to the amount of the settlement only after both parties evaluated their likelihood of success moving forward. Id. For Plaintiff's, there was a high likelihood that additional assets of Defendants were simply not recoverable and that further efforts

to collect risked less money. Id., ⁋8. This conclusion was reached after nearly a year of combing through public filings and the service of post judgment discovery in an attempt to locate assets and Plaintiffs' review of Defendants' tax, bank, and corporate records. Id., ⁋8,18.

## II. Settlement terms.

### A. Non-reversionary $364,668.75 Settlement Fund to provide backpay to Class Members.

Under the Settlement Agreement between the parties, Defendants will pay $364,668.75 into a non-reversionary Settlement Fund for distribution. Ex 1 to Gladney Declaration, ¶ 31. The Settlement Fund will pay for Plaintiff's and the Class Members' damages, costs of notice and administration, and any fees, costs, and service award the Court may Order. *Id.,* ⁋⁋61, 69, 70-73.

Settlement Class Members do not need to submit a claim form or take any other action to receive a distribution from the Settlement Fund. Rather, no later than 30 days after the Settlement Agreement's Effective Date, the Settlement Administrator will mail each Settlement Class Member a check in the amount of the Member's share of the Net Settlement Fund according to the Allocation Plan, less withheld Employment Taxes. Id*.,* ⁋45. Any unclaimed funds, by virtue of uncashed checks after two checks have been issued, shall be distributed pro rata according to the Allocation Plan to all Class Members who have deposited, endorsed, or negotiated their checks. Id*.,* ⁋47. If any funds remain 91 days after the last check was issued, those funds will be distributed *cy pres* to a Court approved charitable organization. Id*.,* ⁋48.

In exchange for this relief, the parties will extend mutual releases. Id*.,* ⁋⁋ 52-56.

### B. Notice to Class Members.

The Settlement includes proposed notice to the class members that inform them of the terms of the Settlement and their rights to opt-out, or object to, the Settlements. Settlement Ex. A. A website and telephone number will also be established to provide class members with additional

information relating to the Settlement. Id.,⁋64. The Settlement Administrator will provide the notice, and the costs will be paid from the Settlement Fund. Id.,⁋69.

Class Counsel retained CPT Group Class Action Administrators to administer the class. Gladney Declaration ⁋ 3. This Court had previously appointed the firms of Stranch, Jennings & Garvey PLLC and Schuchat, Cook & Werner to administer the class at the class certification stage. ECF No.52. Now that the parties have a monetary settlement which would require the issuance of checks, they believe an experienced administrator is more appropriate and move this Court to appoint CPT Group Class Action Administrators to administer the settlement. Id.

**C. Attorneys' Fees, Expenses, and Service Award.**

Before the deadline for Class Members to object, Class Counsel will file a motion with the Court requesting to be paid up to one-third of the Settlement Fund as attorneys' fees. Settlement Agreement ⁋41. Class Counsel will also file a motion requesting that the Court approve a payment of a service award of $2,500 to the Class Representative, in recognition of her efforts in this case that have resulted in a benefit to other class members. Id.,⁋72. Each of the requests for fees and a service award is subject to Court approval as part of final approval, and the Settlement is not contingent on the Court awarding any specific amounts. Id., ⁋⁋42, 62.

**D. Allocation Plan**

Class Counsel's proposed allocation plan is simple straight forward. Ex 1 to Gladney Declaration, ¶ 40-43. Each Settlement Class Member will be entitled to an equal amount of the settlement after fees and costs are paid. Id. This decision was made because the class members worked in same fields with similar wages and benefits, and is consistent with how damages were calculated for the default judgment, where Plaintiffs determined an average pay rate and benefits of employees in the class and used a base line of 40 hours of work per week. Gladney Declaration,

⁋19; EFC No. 61. This method of distribution is the best way to ensure all class members receive the wages and benefits to which they are entitled and have waited nearly three years to receive.

## REASONS IN SUPPORT OF GRANTING THE MOTION

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. In general, the approval process involves three stages: (1) notice of the settlement to the class after "preliminary approval" by the court; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing at which the court grants "final approval" upon finding that the settlement is "fair, reasonable, and adequate," after which judgment is entered, class members receive the benefits of the settlement, and the defendant receives the benefit of the settlement's release. Fed. R. Civ. P. 23(e)(1)–(2), (4)–(5).

### I. The Court should grant preliminary approval under Federal Rule of Civil Procedure 23(e)(1) because the Court "will likely be able to" grant final approval.

We are currently at the "preliminary approval" stage. In deciding whether to grant "preliminary approval" to a proposed settlement, the Court evaluates two issues: (1) whether "the court will likely be able to" grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (2) whether "the court will likely be able to" certify the class for purposes of entering judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B). Here, only the first question is at issue because the Court has previously certified the class. ECF No. 52.

#### A. The Court "will likely be able to" grant final approval because the four *Van Horn* factors and the additional Federal Rule of Civil Procedure 23(e)(2) factors all support that the Settlement is well within the range of a fair, reasonable, and adequate compromise.

First, the Court "will likely be able to" grant final approval because under the relevant factors set forth in Rule 23(e)(2) and by the Eighth Circuit, the Settlement is well within the range of a fair, reasonable, and adequate compromise.

In the Eighth Circuit, courts use four factors, commonly known as the *Van Horn* factors,

along with additional factors recently codified in the 2018 amendment to Federal Rule of Civil Procedure 23(e)(2), to evaluate whether the court "will likely be able to" grant final approval to a settlement as being "fair, reasonable, and adequate." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470, at *5 (S.D. Iowa Apr. 14, 2020) (holding that it is "appropriate for the Court to consider the Rule 23(e)(2) factors along with the *Van Horn* Factors."); *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 7160380, at *1 (W.D. Mo. Nov. 18, 2019). In making the fairness determination, a court must be mindful that "[s]ettlement agreements are generally encouraged, and are presumptively valid." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016) (citing *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). "A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). This presumption is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005). And the presumption is even stronger where the settlement is the product of arm's-length negotiation. *Huyer*, 314 F.R.D. at 626. The "guiding principle" is that "a class action settlement is a private contract negotiated between the parties" and thus the Court's review is limited to ensuring "that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (quoting *In re Wireless Tel Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). A court's decision on the fairness of a class action settlement will be affirmed absent a clear abuse of discretion. *Van Horn*, 840 F.2d at 607.

### B. The *Van Horn* factors support preliminary approval.

The four *Van Horn* factors are: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id.* Each of these factors supports preliminary approval.

As to the first *Van Horn* factor, the terms of the Settlement weigh strongly compared with the merits of the claims. So long as "[t]he settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial," the first *Van Horn* factor "weighs strongly in favor of approving the settlement and finding it to be fair and reasonable." *Huyer*, 314 F.R.D. at 627. In this instance, there has already been adjudication on the merits in the form of default, but a discussion of the merits of settlement is nonetheless instructive. ECF. No 62. Courts have found that settlements that provide as little as 10% or less of potential damages provide an "adequate percentage" recovery under this factor. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate" and that "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."). Here, the Settlement provides a non-reversionary Settlement Fund of $364,668.75, which amounts to a substantial portion of the recovery—roughly 19% of the WARN damages.[4] Gladney Declaration, ⁋19. And weighed against that recovery, Plaintiff faced significant

[4] These amounts do not include attorney's fees, which become damages under the statutes' respective fee-shifting provisions.

risks in locating and attaching to additional assets of the Defendants as evidenced by the fact that it took nearly a year for Plaintiff to locate the assets for this settlement and even then Defendants were prepared to litigate Plaintiffs' ability to collect those assets. Id*.*, ⁋*8.* Thus, the terms of the Settlement weigh favorably against the risks of recovering nothing.

As to the second *Van Horn* factor, Defendants' financial condition is a significant issue. Defendants are no longer operating the facility where Plaintiffs were employed. Further, Plaintiffs learned that Defendant Healthcare Accounting Services closed around December 2024. Gladney Declaration, ⁋12. After an exhaustive search and examination of hundreds of pages of financial information, Plaintiff does not believe Defendants have additional sources of revenue incoming. Id., ⁋8. The assets that Plaintiff located came from the proceeds of an insurance policy held by Defendant Northview Village Center Limited Partnership that was paid out and discovered in post-judgment discovery. Id., ⁋13. While Plaintiffs did not accept a substantially reduced settlement amount, under the circumstances, this factor also weighs in favor of approval. *Marshall*, 787 F.3d 502, 512 (8th Cir. 2015).

As to the third *Van Horn* factor, courts note that "[c]lass actions, in general, place an enormous burden of costs and expense upon [ ] parties," which favors approval. *Id.* (internal quotations and citation omitted). Here, that is undoubtedly true, as continued litigation would have involved significantly more post-judgement discovery that would very likely not result in discovery of additional assets all the while the assets Plaintiff has already identified may have been exhausted in the interim.

Finally, as to the fourth *Van Horn* factor, there is no current opposition to the Settlement, as all parties have agreed to it. This factor is, therefore, appropriately addressed at final approval—after the class has received notice and an opportunity to object.

## II. The Rule 23(e)(2) factors also support preliminary approval.

In addition to the *Van Horn* factors, the Federal Rule of Civil Procedure 23(e)(2) factors support preliminary approval. Those factors are whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's-length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

No one factor is determinative, but the "most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn*, 840 F.2d at 607. Here, each factor supports approval.

Rule 23(e)(2)(A) supports approval because the class representative and class counsel have adequately represented the class by investigating and vigorously pursuing the claims in this case, all the way through trial, and by convincing the Defendants to agree to pay $364,668.75, which is a substantial recovery in light of the circumstances. Gladney Declaration ⁋15.

Rule 23(e)(2)(C) supports approval for several reasons. First, the relief provided eliminates the costs and delays of an additional, and likely fruitless, search for assets. Fed. R. Civ. P.

23(e)(2)(C)(i); Gladney Declaration, ¶8. Second, the method of distributing the relief to the classes is efficient as Class Members will receive a direct cash payment with no need to submit any proof of loss whatsoever. Fed. R. Civ. P. 23(e)(2)(C)(ii). Third, the requested fees are subject to Court approval, are typical of amounts routinely awarded, and will be paid near the time that the class members will also receive their payments. Fed. R. Civ. P. 23(e)(2)(C)(iii).

Finally, Rule 23(e)(2)(D) supports approval because the Settlement treats class members equitably relative to each other. Under Class Counsel's allocation plan, described above, each class member will receive an equal amount of the settlement fund.

Thus, all the relevant factors support that the Court "will likely be able to" grant final approval to the Settlement because it is well within the range of a fair, reasonable, and adequate compromise.

**III. The Court should approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing.**

Upon the granting of preliminary approval, the court "must direct notice in a reasonable manner to all class members" to inform them of the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice may be given by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). After the time for objections and opt-out requests has passed, the Court then holds a hearing to consider whether to grant final approval, taking into account any objections raised by class members and all other relevant factors. Fed. R. Civ. P. 23(e)(2).

As part of the preliminary approval order, the Court should, therefore, also approve the proposed forms and manner of notice set forth in the Settlement and attached as Exhibit 1 to the Declaration of Samuel Gladney. The notice constitutes the "best practicable notice" under the circumstances and is direct notice to each class member individually. The long form of notice is based off of plain-English forms adopted by the Federal Judicial Center and informs the class members of all the required information under Federal Rule of Civil Procedure 23(c)(2)(B), including (i) the nature of the action; (ii) the classes; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Settlement Administrator will provide the notice and report to Class Counsel who will in turn report to the Court on the effectiveness of the notice plan. The notice also provides for the Court to schedule a final approval hearing after class members have had a chance to opt-out of, object to, or remain part of the Settlement. The parties believe that such a hearing should be scheduled more than 90 days after the entry of the preliminary approval order—when Class Counsel shall file their motion for final approval—to allow sufficient time for the notice and response deadlines to pass.

## CONCLUSION

The Court should enter the proposed Preliminary Approval Order and should schedule a final approval hearing.

Dated: October 22, 2026

Respectfully submitted,

/s/ *Samuel K. Gladney*

Samuel K. Gladney #69094 (MO)
John F. Garvey Jr., #35879 (MO)
Colleen Garvey, #72809 (MO)
Ellen A. Thomas, #73043 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
Telephone: (314) 390-6750
sgladney@stranchlaw.com
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

J. Gerard Stranch, IV*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com

Christopher N. Grant
**SCHUCHAT COOK & WERNER**
555 Washington Avenue Suite 520
St. Louis, MO 63101
Telephone: (314) 732-1127
cng@scwattorney.com

**Pro hac vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of October 2026, a true and correct copy of the foregoing Unopposed Motion for Preliminary Approval of Class Action Settlement was filed with the Clerk of the Court via the Court's CM/ECF filing system, which will send notice to all counsel of record.

*/s/Samuel K. Gladney*
Samuel K. Gladney #69094 (MO)