# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN HAWTHORNE, *on behalf of herself and those similarly situated*; Plaintiff, | |
| v. | Case No. 4:23-cv-01711-SRW |
| NORTHVIEW VILLAGE, INC. d/b/a NORTHVIEW VILLAGE, HEALTHCARE ACCOUNTING SERVICES, LLC, and NORTHVIEW VILLAGE CENTER LIMITED PARTNERSHIP; Defendants. | Magistrate Judge Stephen R. Welby |

This Settlement Agreement (all capitalized terms defined below) between Plaintiff Carolyn Hawthorne, on her own behalf and on behalf of the proposed Settlement Class, and Defendants Northview Village, Inc. d/b/a Northview Village and Healthcare Accounting Services, LLC and Northview Village Center Limited Partnership, by the Parties' respective Counsel, sets forth the materials terms of the Parties' proposed settlement of this Action. This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions of this Settlement Agreement, and subject to the Court's approval.

**RECITALS**

A. On or about December 15, 2023, Defendants notified many of its employees at the Northview Village facility ("Facility") that they were being terminated as part of a mass layoff.

B. On or about December 15, 2023, Defendants laid off approximately 184 employees, including Plaintiff, at the Facility.

C. On December 22, 2023, Plaintiff filed the Action, alleging that Defendants' lack of notice to their employees at the Facility violated the WARN Act.

D. The Complaint seeks damages and civil penalties to the fullest extent allowed by the WARN Act on Plaintiff's behalf and on behalf of a putative class of all other employees at the Facility whom Defendants laid off on or about December 15, 2023, as well as reasonable attorneys' fees, as authorized by the WARN Act.

E. On February 21, 2024 Defendants answered the Complaint. Defendants' answers deny all liability to Plaintiff and the putative class; deny that the Action may be maintained as a class action; raise numerous affirmative defenses to liability, including the statutory unforeseeable business circumstance defenses and faltering company defense; and raise the good faith defense.

F. On May 8, 2024, Defendants' counsel moved to withdraw from this case. (ECF No. 33). The court held a hearing on May 24, 2024, and on that same day entered an order, holding this motion in abeyance and ordering Defendants to obtain substitute counsel no later than June 24, 2024. The Court's order indicated that Defendants' pleadings could be stricken, and they could be held in default, if they failed to do so. (ECF No. 37). On July 10, 2024, after Defendants failed to obtain substitute counsel, the Court granted defense counsel' motion to withdraw. (ECF No. 38)

G. Plaintiff filed for Entry of Default on July 16, 2024. (ECF No. 40). Clerk's Default was granted on August 29, 2024. (ECF No. 43).

H. Subsequently, Plaintiff filed a Motion and Memorandum in Support of Class Certification on September 26, 2024 (ECF No 45-46).

I. The Court certified the class on December 16, 2024. (ECF No. 52).

J. Plaintiff filed a Motion for Default Judgment on August 18, 2025. (ECF No. 61). The Court granted the Motion for Default Judgment on September 8, 2025. (ECF No. 62,63).

K. Following the Default Judgement, Plaintiffs worked dutifully through post judgment discovery to obtain information that would allow them to collect on the judgment. This included serving a writ of garnishment on Defendants on November 17, 2025,which came back empty (ECF No. 69), and registering the judgment in the Northern District of Illinois and serving a writ of garnishment on Brickyard Bank in August 2026, (*Hawthorne v. Northview Village, Inc. et al*, 1:26-cv-08532 (N.D. Ill. Aug. 19, 2026). .

L. Following the issuance of discovery and the most recent garnishment, the parties began settlement negotiations.

M. Absent settlement, the process to locate assets, which has already taken roughly one year, would continue. Plaintiff is aware of other judgements and debts of the Defendants and wants to secure a good recovery for the class without the uncertainty of additional litigation.

N. The Parties' Counsel have engaged in extensive arm's-length negotiations concerning the settlement of the claims asserted in the Action.

O. Plaintiff's Motion for Preliminary Approve the Settlement for purposes of effectuating this Settlement Agreement only, comporting with the definition

agreed-upon by the Parties and mirroring the definition set forth below. This Settlement Agreement is expressly conditioned upon, and subject to, preliminary and final approval by the Court, as set forth herein. Absent such approvals, this Settlement Agreement shall be null, void, and of no further force or effect and the Parties shall be returned to their *status quo ante*.

P. Defendants have agreed to fund a settlement fund in the total amount of $364,668.75 to fund the settlement, which shall be used: (1) to pay Settlement Class Members; (2) to pay Attorneys' Fees and Costs as awarded by the Court, if any; (3) to pay the Service Awards to Plaintiff as awarded by the Court, if any; and (4) to pay the Settlement Administrator's Expenses.

Accordingly, it is hereby agreed that, in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, and subject to the terms and conditions set forth herein and the approval of the Court, the Action shall be fully and finally settled and dismissed with prejudice on a class-wide basis:

## AGREEMENT

## I. DEFINITIONS

1. "Action" means the civil action captioned Carolyn Hawthorne, individually and on behalf of those similarly situated v Northview Village, Inc. d/b/a Healthcare Accounting Services, LLC and Northview Village Center Limited Partnership, No. 4:23-cv-01711-SRW, pending in the Court.

2. "Allocation Plan" means the method for allocating the Net Settlement Fund to Settlement Class Members.

3. "Attorneys' Fees and Costs" means an award to Settlement Class Counsel by the Court of Settlement Class Counsel's reasonable attorneys' fees under Rule 23(h) or of Settlement Class Counsel's taxable and nontaxable costs under Rules 54(d) and 23(h).

4. "Complaint" means the operative complaint in the Action, filed on December 22, 2023, and docketed at ECF No. 1, and amended on February 9, 2024.

5. "Court" means the United States District Court for the Eastern District of Missouri.

6. "Defendants" means Northview Village, Inc. d/b/a Northview Village, and Healthcare Accounting Services, LLC, and Northview Village Center Limited Partnership

7. "Defendants' Counsel" means Ashman & Stein, P.C.

8. "Effective Date" means the later of (a) the date of the Final Approval Order, if no objections are timely filed; or (b) if objections are timely filed, the date when no further appellate review of the Final Approval Order is available to any objector, whether by reason of final dismissal of appellate proceedings, final affirmance of the Final Approval Order, or expiration of the time within which appellate review may be sought.

9. "Employment Taxes" means all federal, state, and local taxes on employee wages for which an employer is liable, including taxes imposed by the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

10. "Facility" means the Northview Village facility.

11. "Released Claims" means any and all actual, pled or unpled, potential, filed, known or unknown, fixed or contingent, clamed or unclaimed, suspected or unsuspected claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary, or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct individual or representative, of every

nature and description whatsoever, arising out of the layoffs that occurred on or around December 6, 2024 by Defendants.

12. "Net Settlement Fund" means the Settlement Fund less the Settlement Administrator's Expenses, Attorneys' Fees and Costs, Service Awards, and any other Court-approved deductions.

13. "Notice Plan" means the plan for notifying all Settlement Class Members of their rights under this Settlement Agreement and the applicable law, including the form, content, and manner of such notice.

14. "Parties' Counsel" means Defendants' Counsel and Plaintiff's Counsel.

15. "Party" means any party to the Action.

16. "Plaintiff" means the plaintiff in the Action, Carolyn Hawthorn.

17. "Plaintiff's Counsel" means J. Gerard Stranch, IV and Samuel Gladney, of Stranch, Jennings, & Garvey, PLLC and Chris Grant of Schuchat Cook & Werner.

18. "Preliminary Approval Order" means a Court order preliminarily approving the settlement embodied in this Settlement Agreement under Rule 23(e)(1).

19. .

20. "Released Parties" means Defendants, all Defendants' acquired entities, affiliates, subsidiaries, parent companies, predecessors, successors, and all of their past or present assigns, officers, directors, shareholders, partners, members, employees, principals, consultants, independent contractors, insurers, directors, managing directors, attorneys, accountants, financial and other advisors, investment bankers, investors, underwriters, lenders, auditors, investment advisors, legal representatives, successors in interest, franchisees and persons, firms, trusts,

corporations, and any other agents, as well as their respective predecessors, successors, and assigns.

21. "Releasing Plaintiffs" means Plaintiff and the putative class of individuals who worked at the Northview Village facility and their predecessors, successors, assigns, heirs, estates, administrators, and other agents, as well as their respective predecessors, successors, and assigns.

22. "Releasing Settlement Class Members" means Settlement Class Members and their predecessors, successors, assigns, heirs, estates, administrators, and other agents, as well as their respective predecessors, successors, and assigns.

23. "Rules" means the Federal Rules of Civil Procedure.

24. "Service Awards" means awards to Plaintiff by the Court for her service as representative of the Settlement Class.

25. "Settlement Administrator" means the individual or entity retained to administer the terms of the Settlement Agreement as described in the Settlement Agreement.

26. "Settlement Administrator's Expenses" means expenses, costs, or fees incurred by the Settlement Administrator in administering the terms of the Settlement Agreement as described in the Settlement Agreement, including those specifically so designated below.

27. "Settlement Agreement" means this Class Action Settlement Agreement, embodying the material terms of the Parties' agreement to settle the Action.

28. "Settlement Class" means:

> All employees of Defendants who were terminated pursuant to a mass layoff or plant closing (as those terms are defined in the WARN Act) within 90 days of December 15, 2023. (*as certified by this Court at* ECF No. 52).

29. "Settlement Class Counsel" means the counsel appointed by the Court to serve as class counsel for the Settlement Class under Rule 23(g).

30. "Settlement Class Member" means a member of the Settlement Class.

31. "Settlement Fund" means the sum of $364,668.75 in United States dollars.

32. .

33. "WARN Act" means the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109.

## II. INTERPRETATION

34. "Including" shall not be interpreted as a limitation.

35. "Or" shall be interpreted inclusively.

36. The number of the noun or verb, and the number and gender of the pronoun, shall be interpreted as including the others when necessary to effect the Parties' intent.

37. No Party or Parties' Counsel shall be deemed the drafter of the Settlement Agreement for purposes of interpreting it.

38. All references to days shall be interpreted to mean calendar days, unless otherwise noted. When a deadline or date falls on a weekend or a legal Court holiday, the deadline or date shall be extended to the next business day that is not a weekend or legal Court holiday.

## III. SETTLEMENT FUND

39. In consideration of a full, complete, and final settlement of the Action and dismissal of the Action with prejudice, and subject to the Court's preliminary and final approval, within 30 days of execution of the Settlement Agreement, Defendants shall pay the Settlement Fund to the Settlement Administrator by ACH transfer.

40. The Settlement Administrator shall hold the Settlement Fund in an escrow account. All fees, costs, and taxes associated with the maintenance of the escrow account shall be Settlement Administrator's Expenses. Any income earned by the Settlement Fund in escrow shall be added to the Settlement Fund.

41. Defendants shall not be responsible for any payments or obligations under this Agreement other than the Settlement Fund under this Settlement Agreement for any reason, but this Agreement does not cover the Case No: 14-CA-333453 before the National Labor Relations Board, which is the only case pending before the NLRB, or involving unfair labor practices, related to the closing of the Facility. Plaintiff's Counsel may seek an award from the Court of reasonable attorneys' fees from the Settlement Fund pursuant to this Agreement; otherwise each party is responsible for its own respective fees and costs.

42.

43. In the event that this Settlement Agreement is not finally approved or otherwise terminates, any amounts of the Settlement Fund that have not been spent, and are not required for amounts that are due and payable for reasonable and identified Settlement Administrator's Expenses already incurred, shall, within ten days, be returned by the Settlement Administrator to Defendants in the manner that Defendants direct. Except as otherwise provided above in this paragraph, no part of the Settlement Fund shall revert to Defendants.

## IV. RELIEF TO THE SETTLEMENT CLASS

44. As soon as practicable after the Effective Date, the Settlement Administrator shall determine each Settlement Class Member's share of the Net Settlement Fund according to the Allocation Plan.

45. As soon as practicable after the Effective Date, and no later than 30 days after the Effective Date, the Settlement Administrator shall mail to each Settlement Class Member a check in the amount of the Settlement Class Member's share of the Net Settlement Fund according to the Allocation Plan, less withheld Employment Taxes (as described below), which shall be valid for 90 days from the date of issuance.

46. Any check that is not deposited within 90 days from issuance, or mail that is returned undeliverable, shall be reissued by the Administrator using standard skip-trace methods.

47. If any funds remain in the Net Settlement Fund 91 days from the date the last check was issued under the preceding paragraph, those funds shall be distributed *pro rata* according to the Allocation Plan to all Settlement Class Members who deposited, endorsed, or negotiated their checks within 90 days from the date they were issued, in the manner described by the preceding paragraphs.

48. If any funds remain in the Net Settlement Fund 91 days from the date the last check was issued through the second distribution provided for by the preceding paragraphs, such funds shall be disbursed by the Settlement Administrator to a charitable organization, approved by the Court, no later than 7 days after receiving Court approval.

49. Plaintiff's Counsel shall determine the Allocation Plan and provide it to the Settlement Administrator. The Parties shall cooperate in good faith to take all steps reasonably necessary to allowing Plaintiff's Counsel to determine a fair, reasonable, and adequate Allocation Plan.

50. The Settlement Administrator shall treat each payment to each Settlement Class Member from the Net Settlement Fund as back pay for tax purposes, including by issuing an appropriate Form W-2 for the payment, and by withholding and paying appropriate Employment Taxes on the payment.

51. Each Settlement Class Member who receives a payment from the Net Settlement Fund shall be responsible for calculating and paying all applicable federal, state, and local taxes on the payment.

## V. RELEASES TO THE RELEASED PARTIES

52. As of the Effective Date, the Releasing Plaintiffs shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, resolved, relinquished, and discharged each and all of the Released Parties from each and all of the Released Claims. The Releasing Plaintiffs further agree that they will not institute any actions or causes of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal, or local government agency or with any administrative or advisory body, arising from or reasonably related to the Released Claims against the Released Parties

53. The obligations incurred by the Released Parties under this Settlement Agreement shall be a full and final disposition of the Action and all Released Claims as against all Released Parties. Notwithstanding, this paragraph does not apply to any unfair labor practice proceeding.

54. As of the Effective Date, the Releasing Settlement Class Members shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, resolved, relinquished, and discharged each and all of the Released Parties from each and all of the Released Claims. The Releasing Settlement Class Members further agree that they will not institute any actions or causes of action (in law, equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal, or local government agency or with any administrative or advisory body, arising from or reasonably related to the Released Claim, directly or indirectly, against the Released Parties.

55. The obligations incurred by the Released Parties under this Settlement Agreement shall be a full and final disposition of the Action and all Released Claims as against all Released Parties. Notwithstanding, this paragraph does not apply to Case 14-CA-333453 before the National

Labor Relations Board, which is the only case pending before the NLRB, or involving unfair labor practices, relating to the closing of the Facility.

56. With respect to the garnishment against Brickyard Bank, the Parties shall cooperate in making arrangements to ensure that $364,668.75 is maintained for purposes of covering this Settlement Agreement. and not withdrawn or used for any other reason, provided that upon agreement to arrangements to maintain such funds, Plaintiffs shall release the garnishment for all remaining amounts.

## VI. SETTLEMENT ADMINISTRATOR

57. Plaintiff shall obtain bids from potential settlement administrators for administering the terms of this Settlement Agreement as provided in the Settlement Agreement, including effectuating the Notice Plan (and distributing the Net Settlement Fund to Settlement Class Members).

58. Plaintiff shall select a Settlement Administrator with Defendants' consent, which shall not be unreasonably withheld, and shall ask the Court to approve the Settlement Administrator in the Preliminary Approval Order.

59. The Settlement Administrator's fees shall be Settlement Administrator's Expenses.

60. All Settlement Administrator's Expenses shall be paid by the Settlement Administrator from the Settlement Fund.

61. It shall be the responsibility of the Settlement Administrator to respond to all non legal inquiries from or on behalf of the Settlement Class Members with respect to this Settlement Agreement. The Parties' Counsel must both approve any FAQs or other material the Settlement Administrator may use to answer inquiries and shall confer and assist the Settlement Administrator as it requests.

## VII. NOTICE OF SETTLEMENT

62. The Parties shall cooperate reasonably and in good faith to agree on the form and content of notices to be sent to Settlement Class Members under the Notice Plan that clearly and concisely state in plain, easily understood language, taking into account any special concerns about the language needs of the Settlement Class Members, (a) the nature of the action; (b) the definition of the Settlement Class; (c) the Settlement Class's WARN Act claim; (d) that any Settlement Class Member may enter an appearance through an attorney if desired; (e) that the Court will exclude from the Settlement Class any member who requests exclusion; (f) the time and manner for requesting exclusion; (g) the binding effect of a class judgment on Settlement Class Members; (h) the essential terms of the Settlement Agreement; (i) information regarding Attorneys' Fees and Costs; (j) the essential terms of the Allocation Plan and the manner of making distributions from the Net Settlement Fund; and (k) Plaintiff's Counsel's contact information.

63. The Parties shall cooperate reasonably and in good faith to agree on a manner of giving notice under the Notice Plan that is reasonable and reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of the Action and to afford them an opportunity to present their objections.

64. The Notice Plan shall include: (a) a password-protected website at a URL agreed to by the Parties, where a detailed notice shall be posted; (b) a toll-free number and an email address at which Settlement Class Members may obtain information or contact the Settlement Administrator; and (c) emails, or, if email addresses are unavailable or emails are returned as undeliverable, mailings to Settlement Class Members containing a summary notice.

65. If any emailed summary notice is returned as undeliverable, the Settlement Administrator shall promptly cause the summary notice to be mailed to that Settlement Class Member. If any mailed summary notice is returned as undeliverable with a forwarding address,

the Settlement Administrator shall promptly cause the summary notice to be forwarded by mail to the listed forwarding address. If any mailed summary notice is returned as undeliverable without a forwarding address, the Settlement Administrator must attempt to locate the correct address through a reasonable search and must promptly forward the summary notice to the address obtained from the search.

66. Plaintiff shall ask the Court to approve the Notice Plan in the Preliminary Approval Order. The Settlement Administrator shall effectuate the Notice Plan as approved by the Court. The costs of effectuating the Notice Plan shall be Settlement Administrator's Expenses.

67. Defendants shall cooperate reasonably and in good faith with the Settlement Administrator to provide the Settlement Administrator with such information on Settlement Class Members as is reasonably necessary for effectuating the Notice Plan, including Settlement Class Members' full names, last known mailing and physical addresses, email addresses, and partial Social Security numbers. The Union that represents the employees in this matter, SEIU Healthcare Missouri Kansas, a division of SEIU Healthcare Illinois Indiana, shall be allowed to assist the Administrator with finding the most recent address for class members to ensure proper notification.

68. With the good-faith and reasonable cooperation of the Parties, the Settlement Administrator shall serve notice of the Settlement Agreement that meets the requirements of 28 U.S.C. § 1715 on the appropriate federal and state officials no later than 10 days following the filing of the Settlement Agreement with the Court, and shall otherwise comply with the statute's terms.

69. The costs of serving the notice required by 28 U.S.C. § 1715 and of otherwise complying with its terms shall be Settlement Administrator's Expenses.

## VIII. ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS

70. Plaintiff's Counsel may seek an award from the Court of reasonable attorneys' fees under Rule 23(h), not to exceed one third of the Settlement Fund.

71. Plaintiff's Counsel may also seek an award from the Court of their taxable and nontaxable costs under Rules 54(d) and 23(h).

72. Plaintiff's Counsel may seek a Service Award, not to exceed $2,500 to the Plaintiff. Defendants will not oppose such a request.

73. All Attorneys' Fees and Costs, and Service Awards, shall be paid by the Settlement Administrator from the Settlement Fund.

74. The Settlement Administrator shall pay any Service Awards to Plaintiff in a manner directed by Plaintiff's Counsel within 10 days of entry of the Court's order granting Plaintiff's motion for Attorneys' Fees and Costs. The Settlement Administrator shall issue appropriate Forms 1099 to Plaintiff for tax purposes.

75. The Settlement Administrator shall pay any Attorneys' Fees and Costs to Plaintiff's Counsel in a manner directed by Plaintiff's Counsel within 10 days of entry of the Court's order granting Plaintiff's motion for Attorneys' Fees and Costs.

## IX. PRELIMINARY APPROVAL, FINAL APPROVAL, AND FINAL JUDGMENT

76. The Parties shall cooperate in good faith to take all reasonably necessary steps to obtain the Court's approval of the Settlement Agreement.

77. Plaintiff shall move the Court for, and Defendants shall not oppose entry of, a Preliminary Approval Order which (a) preliminarily approves the settlement embodied in this Settlement Agreement under Rule 23(e)(1); (b) designates Plaintiff's Counsel as interim Settlement Class Counsel under Rule 23(g)(3); (c) approves the Notice Plan; (d) approves the Allocation Plan; (e) approves the Settlement Administrator; (f) directs that notice be given to the

Settlement Class according to the Notice Plan; (g) establishes the time and manner for requesting exclusion from the Settlement Class; (h) schedules the hearing required by Rule 23(e)(2) in accordance with 28 U.S.C. § 1715 for hearing Plaintiff's motions for a Final Approval Order; and (i) schedules a hearing on Plaintiff's motion for Attorneys' Fees and Costs, and for Service Awards.

78. In accordance with the terms of the Preliminary Approval Order, Plaintiff shall move the Court for, and Defendants shall not oppose entry of, a Final Approval Order which (a) approves the settlement embodied in the Settlement Agreement under Rule 23(e)(2); (b) certifies the Settlement Class for purposes of settlement under Rules 23(a) and 23(b)(3); (c) designates Plaintiff's Counsel as Settlement Class Counsel under Rule 23(g)(1); and (d) provides for entry of final judgment as a separate document under Rule 58(a) dismissing the Action with prejudice, except retaining ancillary jurisdiction to decide Plaintiff's motion for Attorneys' Fees and Costs, and for Service Awards, and to enforce the terms of the Settlement Agreement.

79. Except as necessary to secure approval of this Settlement Agreement or as otherwise provided herein, the Parties shall take no further steps to prosecute the Action in this Court or any other court.

## X. TERMINATION

80. The Settlement Agreement shall terminate if the settlement it embodies is not approved by the Court; or if its terms are materially altered by the Court in the Preliminary or Final Approval Order.

81. Any ruling by the Court or any reviewing court as to Attorneys' Fees and Costs shall not in any way terminate or modify the Settlement Agreement.

82. If the Settlement Agreement is terminated, it shall have no force or effect, and the Parties shall be restored to the *status quo ante* that existed before they agreed to settle the Action.

## XI. OTHER MATTERS

83. This Settlement Agreement shall be governed by the laws of the State of Missouri, without regard to its conflicts of law principles.

84. The Parties shall cooperate with each other in good faith to consummate the terms of this Settlement Agreement and all related transactions, and shall take all reasonably necessary steps to give effect to the terms of this Settlement Agreement.

85. This Settlement Agreement contains the full, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and supersedes any prior writings or agreements (written or oral) between or among the Parties, which prior agreements may no longer be relied upon for any purpose.

86. This Settlement Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

87. This Settlement Agreement shall bind and inure to the benefit or detriment of the Parties and the Settlement Class Members, and their respective agents, employees, representatives, trustees, members, managers, officers, directors, shareholders, divisions, parent corporations, subsidiaries, heirs, executors, assigns, and successors in interest. All of Defendants' affiliates shall be intended third-party beneficiaries of the Released Claims set forth in this Settlement Agreement.

88. The Parties acknowledge that they have been represented in negotiations for and in the preparation of this Settlement Agreement by independent counsel of their own choosing, that they have read this Settlement Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Settlement Agreement and of its legal effect.

89. Headings contained in this Settlement Agreement are for convenience of reference only and are not intended to alter or vary the construction and meaning of this Settlement Agreement.

90. Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity or otherwise, of or against any of the claims or causes of action released herein, and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

91. If there is conflict between this Settlement Agreement and a Court order, the Court's order shall take precedence.

92. The Settlement Agreement may not be modified in any way except in writing signed by the Parties or Parties' Counsel, subject to Court approval, if required.

93. The Parties may mutually waive any provision of this Settlement Agreement by a written waiver signed by the Parties or Parties' Counsel, subject to Court approval, if required. A waiver of any provision of this Settlement Agreement will not constitute a waiver of any other provision.

94. This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies or electronic scans of executed copies of this Settlement Agreement may be treated as originals.

95. Each of the Recitals stated above are hereby incorporated into this Settlement Agreement as if stated fully herein.

96. Except as otherwise provided herein, all notices, demands, or other communications given or made under the Settlement Agreement shall be in writing and delivered by post, courier, facsimile, or electronically to the following:

*If to Plaintiff or Plaintiff's Counsel:*

Samuel Gladney & Chris Grant

*With a copy to Defendants' Counsel:*

Gary D. Ashman
Ashman & Stein P.C.
8707 Skokie Blvd, Suite #100
Skokie, IL 60077
gdashman@ashmanstein.com

**[purposely left blank]**

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed.

/s/ ______________________ (09/29/2026 18:16:00 CDT)
Plaintiff Carolyn Hawthorne

/s/ ______________________
Defendant Northview Village, Inc. d/b/a Northview Village

/s/ ______________________
Defendant Healthcare Accounting Services, LLC

/s/ ______________________
Defendant Northview Village Center Limited Partnership

Dated: ______________________

Dated: 9/20/26
as to John only:

/s/ ______________________
Samuel K. Gladney, #69094 (MO)
John F. Garvey, #35879 (MO)
Colleen Garvey, #72809 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
sgladney@stranchlaw.com
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com

Christopher N. Grant, #53507 (MO)
**SCHUCHAT COOK & WERNER**
555 Washington Avenue
Suite 520
St. Louis, MO 63101
(314) 732-1127
cng@scwattorney.com

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**

______________________
Gary Ashman
Ashman & Stein, P.C.
8707 Skokie Blvd., Suite 100
Skokie, IL 60077
312/782-3484
gdashman@ashmanstein.com

223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com

# Hawthorne v Northview SIGNED_Settlement_20260921

Final Audit Report 2026-09-29

| | |
|---|---|
| Created: | 2026-09-29 (Central Daylight Time) |
| By: | Ryan Hall (rhall@stranchlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAcotIbvyNEmICvCdzTzBYNRhAwU5OZXdF |

## "Hawthorne v Northview SIGNED_Settlement_20260921" History

Document created by Ryan Hall (rhall@stranchlaw.com)
2026-09-29 - 4:01:18 PM CDT

Document emailed to cjhawthorne2@gmail.com for signature
2026-09-29 - 4:05:30 PM CDT

Email viewed by cjhawthorne2@gmail.com
2026-09-29 - 6:14:06 PM CDT

Signer cjhawthorne2@gmail.com entered name at signing as Carolyn Hawthorne II
2026-09-29 - 6:15:58 PM CDT

Document e-signed by Carolyn Hawthorne II (cjhawthorne2@gmail.com)
Signature Date: 2026-09-29 - 6:16:00 PM CDT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

Agreement completed.
2026-09-29 - 6:16:00 PM CDT